IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GWENDOLYN D. GABRIEL, BARBARA | § | |
| J. GABRIEL, REGINA BROWN, | § | |
| BRITTNY WASHINGTON, AND | § | |
| KENNETH J. GABRIEL, | § | |
|     PLAINTIFFS, | § | |
| | § | |
| V. | § | CASE NO. 3:20-CV-60-K-BK |
| | § | |
| MERRY OUTLAW, JOHN FRICK, | § | |
| LORENZO BROWN, BRIDGETT | § | |
| ZOLTOWSKI, ESTATE OF BRUCE | § | |
| TURNER, TONYA PARKER, JOHN | § | |
| NATION, ESTATE OF BENJAMIN | § | |
| STEPHENS, AND LATRENA BOOKER, | § | |
|     DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the

undersigned United States magistrate judge for pretrial management. In this civil RICO action,

the Court now considers the remaining Defendants' motions to dismiss,[1] Doc. 24; Doc. 27; Doc.

30; Doc. 40. For the reasons that follow, Defendants' motions to dismiss should be **GRANTED**

and all claims against Defendants should be **DISMISSED**.

## I. BACKGROUND

Plaintiffs filed this *pro se* action[2] against various individuals involved in a state lawsuit

---

[1] Five defendants have already been dismissed from this suit. Doc. 37; Doc. 43; Doc. 49.
[2] As defendants point out in their motions to dismiss, Gwendolyn Gabriel "has been licensed as an attorney by the State of Texas (State Bar No. 07563710) since May 10, 1991." Doc. 24 at 2; Doc. 27 at 2; Doc. 30 at 2.

that resulted in a substantial financial loss for Plaintiffs ("the State Suit").  Defendants include

the opposing party, Merry Outlaw ("Outlaw"), and multiple counsel on both sides, including

Lorenzo Brown ("Brown"), Bridgett Zoltowski ("Zoltowski"), and John Frick ("Frick").  Doc.

17 at 1, 3-4.  Plaintiffs claim Defendants violated federal civil RICO law by covering up

Outlaw's alleged perjury and fraud in the State Suit so that Defendants could obtain a money

judgment against Plaintiffs.  Doc. 17 at 3.

In response to Plaintiffs' operative *Complaint*, Doc. 17, remaining Defendants Frick,

Brown, Zoltowski, and Outlaw filed motions to dismiss arguing, *inter alia*, that Plaintiffs'

complaint should be dismissed under Rule 12(b)(1) because certain Plaintiffs lack standing, Doc.

24 at 6-7, Doc. 27 at 7-9, Doc. 30 at 6-7, Doc. 40 at 6-7, and because the *Rooker-Feldman*

doctrine[3] otherwise bars this suit, Doc. 24 at 2-6, Doc. 27 at 3-7, Doc. 30 at 2-6, Doc. 40 at 2-6.

## II. RULE 12(b)(1) ANALYSIS

Where, as here, a Rule 12(b)(1) motion is filed in conjunction with other Rule 12

motions, the court considers the Rule 12(b)(1) motion first.  *Ramming v. United States*, 281 F.3d

158, 161 (5th Cir. 2001).  A Rule 12(b)(1) motion asserts that a court should dismiss a complaint

for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  "A case is properly dismissed

for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power

to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006,

1010 (5th Cir. 1998) (quotation omitted).  The Court lacks subject matter jurisdiction when

plaintiffs lack standing, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986), or

when the *Rooker-Feldman* doctrine bars their claims, *Rooker*, 263 U.S. at 416, as are

Defendants' contentions here.  The Court concurs with Defendants' assessment.

---

[3] *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415 (1923).

1. *Defendants Lack Standing*

Article III of the Constitution requires that litigants have standing to sue in federal court. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To satisfy the standing requirement, plaintiffs generally need to demonstrate "a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Standing's three constitutional requirements are: (1) injury in fact; (2) causation; and (3) redressability. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The injury-in-fact requirement must implicate "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Injuries in fact must be "suffered by the plaintiff, not someone else." *Stringer v. Whitley*, 942 F.3d 715, 720-21 (5th Cir. 2019) (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)).

Here, Defendants argue Plaintiffs Barbara Gabriel, Regina Brown, Kenneth Gabriel, and Brittny Washington "lack standing to seek an award of monetary damages to [Gwendolyn] Gabriel." Doc. 24 at 6-7; Doc. 27 at 7-9; Doc. 30 at 6-7; Doc. 40 at 6-7. Plaintiffs counter that they "were all directly injured by the unlawful conduct of the Defendant[s'] predicate acts even though they had nothing to do with and were not even a party to the state case." Doc. 34 at 3; Doc. 35 at 1 (incorporating Plaintiffs' response in Doc. 34); Doc. 41 at 2-3; Doc. 45 at 2-3.

Plaintiffs Barbara Gabriel, Regina Brown, Kenneth Gabriel, and Brittny Washington fail to specifically allege any injury they themselves suffered as a result of Defendants' purported actions and claim only injuries allegedly suffered solely by Gwendolyn Gabriel ("Gwendolyn"). As relief, Plaintiffs pray that the Court:

> Award Plaintiff Gwendolyn Gabriel a judgment in the amount of $4.8M in treble damages for Defendants' violation of the RICO Act by committing the predicate acts of perjury, fraud, bribery, mail fraud, obstruction of justice, witness tampering and jury tampering to prevent justice from being served, then giving plaintiff Gabriel's family property where Brittny Washington and her 3 children lived, placing Lis Pendens on Gabriel's family properties, including Gabriel's homestead (with a collective value of $1.5 million) in 2017 to present.
>
> Command the State Commission on Judicial Conduct and the State Bar of Texas to Void the Judgments awarding the Defendant/Perjurer more than $400,000+ . . . and return the Plaintiffs' family's house, . . . and reverse all judgments.
>
> Order the Defendants to remove all 3 Lis Pendens they placed, in their collection of an unlawful debt.
>
> Award a judgment in the amount of $5M for covering up the sexual harassment and retaliation against Plaintiff Gabriel, an individual with mental health disabilities, from the defendants Merry Outlaw and Lorenzo Brown.

Doc. 17 at 20 (cleaned up).  Also, Plaintiffs Barbara Gabriel, Kenneth Gabriel, and Brittny Washington did not appear in the State Suit in any capacity.[4]  And while Regina Brown was a party to the State Suit, she nevertheless lacks standing for also failing to allege any injury *she* suffered.

"[A] RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by reason of the conduct constituting the violation." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 279 (1992) (quotation omitted).  RICO standing is limited "to those who have suffered injury in fact"—"those whom the defendant[s] [have] truly injured in some meaningful sense." *Id.*  Here, Plaintiffs Barbara Gabriel, Regina Brown, Kenneth Gabriel, and Brittny Washington claim no injuries to their personal businesses or property, and every injury for which those Plaintiffs seek redress was alleged to be suffered by Gwendolyn Gabriel alone.

---

[4]  Only two Plaintiffs in this case were plaintiffs in the State Suit—Regina Brown and Gwendolyn Gabriel.  Doc. 17-1 at 1.

For the foregoing reasons, all claims of Plaintiffs Regina Brown, Barbara Gabriel, Kenneth Gabriel, and Brittny Washington should be dismissed without prejudice for lack of standing.

### 2. Rooker-Feldman *bars Plaintiffs' Claims for Declaratory Relief*

In any event, the *Rooker-Feldman* doctrine bars the claims for non-monetary relief of any Plaintiff with standing. It provides that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quotation omitted). Errors in state cases should be reviewed through the appellate process. *See Rooker*, 263 U.S. at 415. The *Rooker-Feldman* bar is not limited to actions in federal court that explicitly seek review of state court decisions, but also extends to those in which "the federal claims are inextricably intertwined with a challenged state court judgment." *Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (citation omitted).

In the case *sub judice*, Defendants argue that the Court lacks subject-matter jurisdiction to hear Plaintiffs' claims (including those of Gwendolyn) under the *Rooker-Feldman* doctrine.[5] Doc. 24 at 1; Doc. 27 at 1-2; Doc. 30 at 1; Doc. 40 at 2. Plaintiffs counter that, whereas the State Suit asserted a claim for fraud, here, they allege RICO violations and, as such, do not seek repudiation of the state court's judgment. Doc. 34 at 3; Doc. 35 at 1 (incorporating response in

---

[5] As the Court noted *supra*, the other Plaintiffs' claims for monetary relief fail for lack of standing. However, assuming those Plaintiffs could demonstrate standing, the 12(b)(1) and 12(b)(6) analysis of Gwendolyn's claims would also result in their claims being barred.

Doc. 34) Doc. 41 at 1-2; Doc. 45 at 2.

The record belies Plaintiffs' assertion, however, as the claims here directly stem from Defendants' purported actions during the State Suit.  Thus, to the extent Plaintiffs ask the Court to: (1) "[c]ommand the State Commission on Judicial Conduct and the State Bar of Texas to Void the Judgments awarding" monetary damages in the state court proceedings; (2) "return the Plaintiffs' family's house"; (3) "reverse all judgments"; and (4) "remove all 3 Lis Pendens" Defendants placed, such claims are clearly barred by *Rooker-Feldman* and the Court lacks subject-matter jurisdiction to review them.  Doc. 17 at 20; *Hale v. Harney*, 786 F.2d 688, 690-91 (5th Cir. 1986).  Although framed as a RICO action, such claims necessarily constitute a collateral attack on the validity of the State Suit.  Stated differently, Plaintiffs can only prevail on the RICO claim alleged here if this Court reverses the state court's findings, which *Rooker-Feldman* prohibits.

Insofar as Plaintiffs request monetary damages based on Defendants' alleged RICO violations, however, their claim is not automatically barred by *Rooker-Feldman*. *Brown v. Anderson*, No. 3:16-CV-0620-D-BK, 2016 WL 6903730, at *2 (N.D. Tex. Oct. 5, 2016) (Toliver, J.), *adopted by* 2016 WL 6893723 (N.D. Tex. Nov. 21, 2016) (citing *Truong*, 717 F.3d at 383; *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012)).  That notwithstanding, under the Court's Rule 12(b)(6) analysis (*infra*), the claims for monetary damages likewise fail.

## III. RULE 12(b)(6) ANALYSIS

A complaint must be dismissed under Rule 12(b)(6) when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citations omitted).  When considering a motion to

dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most

favorable to the plaintiff.  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

However, the Court is not required to accept legal conclusions.  *Iqbal*, 556 U.S. at 664.  Thus,

conclusory allegations cannot be accepted as true; rather, the complaint should be pled with a

certain level of factual specificity.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498

(5th Cir. 2000).

   RICO creates a civil cause of action for any individual "injured in his business or property

by reason of a violation of section 1962."  *Beck v. Prupis*, 529 U.S. 494, 495 (2000) (quoting 18

U.S.C. § 1964(c)).  To state a claim for a RICO violation under section 1962, a plaintiff must

establish that the defendant "(1)  . . . engage[d] in (2) a pattern of racketeering activity (3)

connected to the acquisition, establishment, conduct, or control of an enterprise."  *St. Paul*

*Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (quotation omitted) (emphasis

omitted).  "Racketeering activity" is defined as "any act or threat involving murder, kidnaping,

gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled

substance or listed chemical . . . , which is chargeable under State law and punishable by

imprisonment for more than one year . . . ."  18 U.S.C. § 1961(1)(A).  "A pattern of racketeering

activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or

pose a threat of continued criminal activity."  *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir.

2009).  "The predicate criminal acts can be violations of either state or federal law."  *Snow*

*Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016)

   Plaintiffs allege Defendants engaged in numerous "predicate acts" in violation of RICO,

including, *inter alia*, perjury, fraud, fraud on the court, bribery of a witness, witness tampering,

mail fraud, and obstruction of justice.  Doc. 17 at 5-11.  As set forth below, however, the

complaint fails to state a legally sufficient RICO claim against any Defendant.

     *1.  RICO Claims Against Outlaw*

     Plaintiffs allege Outlaw committed the predicate act of obstruction of justice by perjury

and fraud, which was motivated by Outlaw's desire to cover up her sexual harassment and

retaliation against Gwendolyn and "win hundreds of thousands in money and property" from her.

Doc. 17 at 11.  According to Plaintiffs', Outlaw's *Amended Original Answer, Special Exceptions*,

and *Counterclaim* filed in the State Suit *were* the culpable offenses.  Doc. 17 at 5.  Outlaw argues

Plaintiffs' allegations are simply legal conclusions that the Court need not accept as true.  Doc. 40

at 10.  Outlaw counters that her actions during litigation of the State Suit "do not constitute

predicate acts under RICO."  Doc. 40 at 9.

     Even assuming *arguendo* that the allegations in the pleadings filed in the State Suit could

be considered the statements—let alone the perjured statements—of Outlaw, perjury is not among

the listed predicate acts in section 1961.  18 U.S.C. § 1961(1).  A few courts outside of this circuit

have found that perjury may qualify as a predicate act under RICO because obstruction of justice

in violation of 18 U.S.C. § 1503—arguably encompassing acts of perjury and fraud—is a listed

offense.  *Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 761 (E.D. Mich. 2014) (citing as examples

*C & W Constr. Co. v. Bhd. of Carpenters & Joiners of Am.*, 687 F. Supp. 1453, 1467 (D. Haw.

1988), and *United States v. Mayer*, 775 F.2d 1387, 1391 (9th Cir. 1985)).  Notably, however,

those cases are limited to perjury that occurred in *federal* proceedings, as section 1503 only

applies to federal judicial proceedings.  *Id.*; 18 U.S.C. § 1503.  Although this issue has not yet

been addressed by the Court of Appeals for the Fifth Circuit, numerous other circuits have found

state perjury and fraud cannot constitute racketeering activity.  *Giuliano v. Fulton*, 399 F.3d 381,

388 (1st Cir. 2005) ("[G]eneric allegations of common law fraud that do not implicate the mails

or wires . . . do not constitute racketeering activity under RICO."); *Pearce v. Romeo*, 299 F.

App'x 653, 658 (9th Cir. 2008) (Perjury is not "within the type of state law crimes that constitute

predicate acts under RICO."). The Seventh Circuit, citing the Second Circuit, expounded on this

finding:

> Rather than develop a new category of prohibited acts, RICO borrowed other
> provisions of the federal criminal law to define "racketeering activities." 18 U.S.C.
> § 1961(1). The statute cross-references various acts of witness tampering and
> obstruction of justice, but it does not include the criminal sanction for perjury,
> found at 18 U.S.C. § 1621. As the Second Circuit explained, "Congress did not
> wish to permit instances of federal or state court perjury as such to constitute a
> pattern of RICO racketeering activities, [demonstrating] an understandable
> reluctance to use federal criminal law as a back-stop for all state court litigation."
> *United States v. Eisen*, 974 F.2d 246, 254 (2d Cir. 1992).

*Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 776-77 (7th Cir. 2018).

Although not binding, the reasoning of the Second and Seventh Circuit appellate courts is

nevertheless instructive, and it is adopted here. The Court thus finds that the alleged perjury that

took place in State Suit proceedings cannot reasonably constitute a predicate act for RICO

purposes. *Id.* (citing *O'Malley v. N.Y.C. Transit. Auth.*, 896 F.2d 704, 708 (2d Cir. 1990)).

   2. *RICO Claims Against Zoltowski and Frick*

Zoltowski and Frick represented Outlaw in various capacities in the State Suit. Doc. 17 at

3, 9. Plaintiffs allege Zoltowski's settlement offer to Plaintiff Regina Brown in the State Suit was

really a veiled attempt at witness bribery and constituted mail fraud and obstruction of justice.

Doc. 17 at 6, 11-12. Plaintiffs allege Frick committed fraud and attempted to unlawfully collect a

debt in the State Suit when he signed an abstract of judgment and filed three notices of lis

pendens. Doc. 17 at 1-14; Doc. 24 at 8-9. Frick and Zoltowski both aver these were protected

litigation acts by an attorney. Doc. 24 at 8-9; Doc. 30 at 8-9.

Attorneys have qualified immunity from civil liability with respect to the claims of non-clients for actions taken in connection with representing a client. *Troice v. Proskauer Rose, LLP*, 816 F.3d 341, 349 (5th Cir. 2016) (citing *Cantey Hanger LLP v. Byrd*, 467 S.W.3d 477, 482 (Tex. 2015)).  An attorney cannot be held liable to an opponent for conduct that requires "the office, professional training, skill, and authority of an attorney." *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Martin v. Trevino*, 578 S.W.2d 763, 771 (Tex. App.—Corpus Christi–Edinburg 1978, writ ref'd n.r.e.)).  Because Plaintiffs merely complain of Zoltowski and Frick's conduct in the representation of their client, Outlaw, they are entitled to qualified immunity.

### 3.  RICO Claims Against Brown

Defendant Lorenzo Brown was Plaintiff Regina Brown's retained attorney in the State Suit (apparently the two are unrelated).  Doc. 17 at 3.  Plaintiffs allege Lorenzo Brown violated RICO in the State Suit by belatedly enjoining Gwendolyn for purposes of partitioning the Property against her will, which Plaintiffs contend was "accomplished to almost win $10,000" through the attempted bribery of her State Suit co-plaintiff.  Doc. 17 at 11.  They aver that Gwendolyn refused to sign a representation agreement with Lorenzo Brown, however.  Doc. 17 at 3.  Brown argues in his motion to dismiss that, *inter alia*, the actions Plaintiffs complain of were not criminal but were taken in the course of litigation, and therefore do not amount to predicate actions supporting a RICO claim.  Doc. 27 at 11-12.  Plaintiffs disagree that Brown's status as an attorney absolves him of liability under RICO.  Doc. 45 at 4.

As discussed *supra*, Brown is protected by qualified immunity for acts taken as attorney in the scope of litigation.  Even actions that violate lawyers' rules of professional conduct but are not crimes in and of themselves cannot be the requisite predicate acts to establish a RICO pattern. *St.*

10

*Germain*, 556 F.3d at 263.  The specific acts Plaintiffs attribute to Brown and contend amounted

to fraud, perjury, and bribery are merely those of legal counsel related to and done during the

course of litigation and, as such, cannot support a RICO claim.

Further, Brown's alleged sexual harassment of Gwendolyn is insufficient to state a claim

under RICO—she demonstrates no pattern of racketeering activity as related to the alleged

misconduct, which, as Brown points out, occurred, in 2012 at the latest.[6] *Doc. 27 at 12*; *see*

*Fowler v. Burns Intern. Sec. Servs., Inc.*, 763 F. Supp. 862 (N.D. Miss. 1991) (finding extortion

claim rooted in sexual harassment did not qualify as "racketeering activity" as defined in 18

U.S.C. § 1961(1)(A) absent a threat of future criminal conduct, so plaintiff could not establish a

pattern of racketeering activity).

For the foregoing reasons, Plaintiffs'—and specifically Gwendolyn's—claims all fail.

### 4. Leave to Amend

Although a court may dismiss a claim that fails to meet the pleading requirements, "it

should not do so without granting leave to amend, unless the defect is simply incurable or the

plaintiff has failed to plead with particularity after repeated opportunities to do so." *Hart v. Bayer*

*Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).  Here, the defects in Plaintiffs' complaint are, as

outlined above, simply incurable.  Granting leave to amend would be futile and the Court is under

no obligation to do so.

---

[6] RICO actions are subject to a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  The Fifth Circuit follows the "injury discovery" rule, "under which the limitations period runs from the date when a plaintiff knew or should have known of his injury." *Boulmay v. Rampart 920 Inc.*, 124 F. App'x 889, 891 (5th Cir. 2005) (quoting *Rotella v. Wood*, 528 U.S. 549, 553-54 (2000)).  "In *Rotella*, the Supreme Court rejected a limitations period that begins to run only when the plaintiff discovers both an injury and a pattern of RICO activity." *Id.* (citing *Rotella*, 528 U.S. at 552-54).  Here, the alleged harassment occurred no later than in 2012.  Doc. 27 at 12.  Plaintiffs did not bring this RICO action until January 2020, more than seven years later.  Doc. 3 at 1.

11

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, Doc. 24, Doc. 27, Doc. 30, and

Doc. 40, should be **GRANTED**.  Plaintiffs Barbara Gabriel, Regina Brown, Kenneth Gabriel, and

Brittny Washington's claims should be **DISMISSED WITHOUT PREJUDICE** for lack of

standing, and Plaintiff Gwendolyn Gabriel's claims (and alternatively those of the other Plaintiffs)

should be **DISMISSED WITH PREJUDICE** in accordance with the *Rooker-Feldman* doctrine

and for failure to state a claim upon which relief can be granted.

**SO RECOMMENDED** on February 14, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).